IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAPTAIN KENNEDY, Captain of )<br>SCI-Greene Diversionary Treatment )<br>Unit, and ROBERT D. GILMORE, )<br>Superintendent of SCI-Greene, )<br>)<br>Defendants. ) | Civil Action No. 22 – 1203<br><br>District Judge David S. Cercone<br>Magistrate Judge Lisa Pupo Lenihan |

### **MEMORANDUM OPINION**

For the following reasons, the Court will dismiss the Complaint (ECF No. 4) with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**A. Background**

Plaintiff Jerome Junior Washington ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He initiated this prisoner civil rights action by the filing of a Motion for Leave to Proceed *in forma pauperis* (ECF No. 1), which was granted on August 30, 2022 (ECF No. 3). Plaintiff has sued Robert D. Gilmore, the former Superintendent of SCI-Greene, and Captain Kennedy, a Captain in the Diversionary Treatment Unit ("DTU") at SCI-Greene. (ECF No. 4, ¶¶ 3-4.)

Plaintiff states that on April 4, 2018, he was assigned to the DTU at SCI-Greene, a Level-5 housing unit for inmates with serious mental illness or intellectual disability who present safety

1

and/or security needs that cannot be accommodated by less restrictive housing.[1]  Id., ¶¶ 5, 6, 9. Plaintiff states that he is a "D Roster" inmate, which is a DOC mental health rating that identifies him as having a serious mental illness.  Id., ¶ 7.  He claims to have been diagnosed with schizoaffective disorder, post-traumatic stress disorder, visual and auditory hallucinations, suicidal ideation, attention deficient disorder, and bipolar I.  Id., ¶ 6.  He also says he was diagnosed with an anti-social personality disorder.  Id.

Plaintiff states that during his confinement in the DTU at SCI-Greene, he suffered from lack of sleep, overwhelming fear, paranoia, feeling "on edge," and suicidal thoughts and engaged in self-mutilation.  Id., ¶¶ 17, 23.  Plaintiff specifically alleges that the DTU is a "chaotic environment" where inmates are subjected to "unjustified assaults by correctional officers," "sexual harassment by male correctional officers," "correctional officers who encourage mentally ill inmates to kill themselves," "inmates who bang on their steel toilets all day and night," "inmates who scream and yell all day and night," "frequent threats of bodily harm by correctional officers," and correctional officers' "unjustified use of chemical agents" that cause skin irritation and breathing difficulty.  Id., ¶¶ 14, 21-22.  Plaintiff alleges that all of this occurs under Defendant Kennedy's supervision since Kennedy "is responsible for the overall oversight of care[,] custody and control of the safety and psychological services in SCI-Greene."  Id., ¶¶ 3, 14.

Plaintiff gives the following examples of Defendant Kennedy's failures associated with his supervision of inmates in the DTU.  First, in May or June of 2020, Defendant Kennedy

---

[1] This is believed to be a typo.  Records from a previous case that Plaintiff filed show that Plaintiff was removed from the Secure Residential Treatment Unit ("SRTU") and placed in the DTU at SCI-Greene on April 4, 2019.  *See* Washington v. Wetzel, *et al*., Civil Action No. 18-1390, ECF No. 119, ¶ 86 (W.D. Pa.).

assertedly allowed correctional officers to spray an "enormous amount" of chemicals on the unit causing all the inmates to cough and yell out in agony. Id., ¶ 15. The inmates complained about the incident in grievances and lawsuits, and Plaintiff claims that as a result Defendant Kennedy falsified inmate misconducts and ultimately transferred Plaintiff to SCI-Rockview. Id. As another example, Plaintiff states that on January 5, 2020, Defendant Kennedy was aware that Plaintiff was grabbed by the arm and smashed up against the wall by correctional officers as they searched his cell without him being able to witness the search, then escorted him to the strip cage, assaulted him and destroyed his property. Id., ¶ 16. He claims that Defendant Kennedy refused to investigate or discipline the officers involved. Id.

Plaintiff claims that he should have been removed from the DTU in September of 2019, which was after completion of his disciplinary custody time, but instead he remained confined in the unit without any "exceptional circumstances" justifying his placement. Id., ¶¶ 6, 7, 10. Defendant Kennedy supposedly chose to keep him in the DTU in the hopes that Plaintiff would accrue more disciplinary custody time from misconducts than he would likely receive for self-harm or refusing to obey an order. Id., ¶ 12. It appears Plaintiff claims that his continued confinement in the DTU without any disciplinary custody time was a violation of DOC policy. Id., ¶¶ 10-11. Plaintiff states that he was eventually removed from the DTU at SCI-Greene and transferred to the Behavior Management Unit ("BMU") at SCI-Rockview in June of 2020. Id., ¶¶ 7, 22.

As best this Court can discern, Plaintiff is not actually attempting to assert any claims against Defendant Kennedy based on Kennedy's conduct in the aforementioned allegations. Instead, it appears that Plaintiff sets forth those allegations in order to support his claim against Kennedy for deliberate indifference to his serious mental health needs while he was in the DTU

at SCI-Greene, as well as a claim that Kennedy was deliberately indifferent to the needs of the other inmates confined there.[2]  Plaintiff asserts that Defendant Kennedy's enactment and enforcement of polices, practices and procedures in the DTU at SCI-Greene directly violate inmates' rights under the Eighth Amendment insofar as they relate to the confinement of inmates in the DTU for conduct attributable to their mental illnesses, but without access to adequate mental health treatment, and also promote a disciplinary system that does not take into account the inmates' mental illnesses and the impact of the chaotic DTU environment that may exacerbate their mental illness, including long-term isolation, when imposing sanctions.  Id., ¶¶ 18-20.  Plaintiff claims that Defendant Kennedy is aware of, but deliberately indifferent to, the fact that prisoners who have been diagnosed as having serious mental health issues are placed in SCI-Greene's DTU for extended periods of time without adequate mental health treatment and that the conditions of their confinement exacerbate their mental illnesses and create a substantial risk that their mental health will deteriorate.  Id., ¶¶ 24-25.  Plaintiff seeks compensatory, punitive, declaratory and injunctive relief in the form of better mental health care.  Id., ¶ 29.

For the following reasons, the Court will dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted.

## B. Standard of Review

---

[2] The only "claim" set forth in the Legal Claims section of his Complaint is one for a violation of the Eighth Amendment, as applied to the States through the Fourteenth Amendment.  (ECF No. 4, ¶¶ 18-19.)  As aptly stated by the Middle District of Pennsylvania in one of Plaintiff's cases, even though he is *pro se*, Plaintiff is no rookie litigant.  He has filed and litigated dozens of civil rights cases in federal court, as well as numerous appeals in the Third Circuit.  Washington v. Myers, 4:22-CV-01858, ECF No. 17, p.13 (M.D. Pa. Oct. 13, 2023).  Therefore, the Court assumes that the only claim Plaintiff is intending to assert is one for a violation of the Eighth Amendment.

4

When a plaintiff has requested leave to proceed *in forma pauperis*, district courts must review his allegations in accordance with 28 U.S.C. § 1915(e). Section 1915(e)(2) requires federal courts to review complaints filed *in forma pauperis* and to dismiss, at any time, any action that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

When determining whether an action has failed to state a claim for purposes of § 1915(e)(2)(B)(ii), the Court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). D'Agostino v. CECOM RDEC, 436 F. App'x 70, 72 (3d Cir. 2011). That means that the Court must dismiss a complaint if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff. Twombly, 550 U.S. at 555-56; *see also* Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above a speculative level[.]" Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906

---

[3] Dismissal under § 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

5

(3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *See* Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

### C. Discussion

#### 1. Statute of Limitations

Congress has not established a time limitation for a § 1983 cause of action. Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in* Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. 2009). The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action. Wilson, 471 U.S. at 278. In Pennsylvania, the statute of limitations for tort actions is two years. 42 Pa. Con. Stat. Ann. § 5524. Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years. *See* Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run. *See* Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391 (citations omitted).

"When screening a complaint under § 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." Whitenight v. Commonwealth of Pennsylvania State Police, 674 F. App'x 142, 144 (3d Cir. 2017) (citing cases); *see also* Smith v. Delaware County Court, 260 F. App'x 454, 455 (3d Cir. 2008).

Here, affording Plaintiff the most liberal construction of his *pro se* Complaint, his claims appear to be time barred. Although Plaintiff does not articulate when the specific incidents giving rise to his claims occurred, the latest they could have occurred would be prior to his

7

transfer to SCI-Rockview in June 2020. However, Plaintiff did not file his Complaint in this case until August 11, 2022, over two years later. As such, the Complaint appears to have been untimely filed beyond the applicable statute of limitations and should therefore be dismissed for Plaintiff's failure to state a claim upon which relief may be granted.[4] *See* Jones v. Bock, 549 U.S. 199, 215 (2007) (If the allegations, taken as true, show that relief is barred by the applicable statute of limitations then a complaint is subject to dismissal for failure to state a claim).

### 2. Personal Involvement

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See*, *e.g.*, Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-established that, in the Third Circuit, personal involvement of defendants in alleged constitutional deprivations is a requirement in a section 1983 case and that a complaint must allege such personal involvement. *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the court stated in Rode:

---

[4] The Court recognizes that the statute of limitations is tolled during the time inmates exhaust their administrative remedies, Pearson v. Secretary Department of Corrections, 775 F.3d 598 (3d Cir. 2015), and that courts "may not *sua sponte* dismiss a prisoner's § 1983 action on the basis of the statute of limitations unless it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard[,]" Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (3d Cir. 2009) (citing Abbas v. Lt. Dixon, 480 F.3d 636, 640 (2d Cir. 2007)). Plaintiff alleges that he did exhaust his administrative remedies for the claim he raises in his Complaint. (ECF No. 4, ¶¶ 26-28.) Although it appears from the face of Plaintiff's Complaint that there are no meritorious tolling issues for the majority, if not all, of the relevant time period at issue, the Court will proceed to address alternative bases for dismissal.

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted). Courts routinely hold that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.

Plaintiff has failed to allege the personal involvement of Defendant Gilmore. With respect to Defendant Gilmore, Plaintiff alleges only that he is the Superintendent at SCI-Greene, and as such he is responsible for the overall operation of SCI-Greene. (ECF No. 4, ¶ 4.) However, he does not allege that Defendant Gilmore directed or participated in any of the alleged wrongdoings that form the basis of his claims. In fact, Defendant Gilmore's name appears only in the caption and the defendant-identification section of Plaintiff's Complaint. Because it is quite clear that Plaintiff seeks to hold Defendant Gilmore liable based solely on the operation of *respondeat superior*, he has failed to state a claim against him.

The Court also would note that to the extent Plaintiff may be attempting to assert claims against Defendant Kennedy for the only two identified events in the Complaint, specifically the events that occurred on January 5, 2020, and in May or June of 2020, Plaintiff has also failed to plead the personal involvement of Defendant Kennedy. There are no pleaded facts to suggest that Defendant Kennedy knew of the events that occurred on those dates prior to their occurrence, nor are there pleaded facts showing that he directed or participated in those events. At best, Plaintiff has alleged that Defendant Kennedy learned of those events after the fact and failed to discipline the officers involved on January 5, 2020, and he falsified misconducts against inmates after the fact as it relates to the incident that occurred in May or June of 2020. This is

9

insufficient to demonstrate Defendant Kennedy's personal involvement in those underlying incidents.[5]

### 3. **Deliberate Indifference**

Plaintiff asserts a violation of the Eighth Amendment particularly as it relates to Defendant Kennedy's alleged deliberate indifference to his serious mental health needs, as well as the mental health needs of other mentally ill inmates.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.

---

[5] Once again, the Court reiterates that it does not believe Plaintiff is attempting to assert claims against Defendant Kennedy based on his involvement in these events. *See* FN 2. Nevertheless, Defendant Kennedy's alleged failure to discipline officers after the events that occurred on January 5, 2020, does not state a claim since Plaintiff does not allege that any constitutional violation that occurred by the officers on that day was the result of a policy or practice of Defendant Kennedy failing to discipline his subordinates. *See* Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 316-17 (3d Cir. 2014) ("'Failure to' claims – failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability."). Similarly, Defendant Kennedy's alleged falsification of misconducts on inmates following the events that occurred in May or June of 2020 also does not state a claim since Plaintiff has no standing to sue on behalf of the other inmates, and to the extent any misconduct was allegedly falsified against him, the "mere allegations of falsified evidence of misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). Additionally, to the extent Plaintiff is alleging that Defendant Kennedy's choice to confine him in the DTU in violation of DOC policy amounted to a constitutional violation, such allegation does not state a claim because DOC policies do not create a right, *see* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); *see also* Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation), and therefore a violation of such policy does not in and of itself amount to a constitutional violation. *See* United States v. Fattah, 858 F.3d 801, 813-14 (3d Cir. 2017) (citing United States v. Christie, 624 F.3d 558, 573 (3d Cir. 2010) for approval that a "violation of internal policy alone does not amount to a violation of constitutional due process" because government policies and guidelines "do not themselves create rights"); Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation.")

In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In a situation in which a prisoner alleges deliberate indifference to a medical need, a plaintiff must plead (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

With respect to the first prong, a medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987).

With respect to the second prong, deliberate indifference is properly pled by factual allegations providing a showing that the official knew of and disregarded an excessive risk to inmate safety. Farmer, 511 U.S. at 837. The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must also "draw the inference." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The Third Circuit has held that this standard is met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999).

First and foremost, it appears that Plaintiff is attempting to assert claims for the violation of the rights of other inmates in addition to himself. However, it is well-established that plaintiffs in federal court are barred from asserting the constitutional and statutory rights of others. Warth v. Seldin, 422 U.S. 490, 499 (1975). A federal court's jurisdiction "can only [be] invoked when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" Id. at 499 (citing Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)). As such, to the extent Plaintiff is attempting to pursue relief for violations of his fellow prisoners' constitutional rights, he lacks standing to do so.

Next, while Plaintiff may have adequately alleged a medical need in the form of serious mental health problems, there are no allegations in the Complaint that Defendant Kennedy was aware of or knew of a substantial risk of serious harm to Plaintiff's mental health, much less that he deliberately disregarded that risk when he allegedly enacted or enforced any policies, practices and procedures with respect to Plaintiff's confinement in the DTU – whether that be keeping Plaintiff confined in the DTU for conduct attributable to his mental illness (e.g., self-harm), the issuance of disciplinary sanctions against Plaintiff without consideration of its impact on his mental health, or the impact of the conditions of confinement in the DTU on Plaintiff's mental health. Although there can be little doubt that such actions by Defendant Kennedy, and the conditions Plaintiff faced in the DTU, may have indeed negatively impacted Plaintiff's mental health, as it likely would for anyone, that is not the standard by which to evaluate a deliberate indifference claim. Instead, an inmate is required to plead facts to show that, for example, the prison official intentionally denied or delayed mental health treatment for that inmate knowing that it would lead to a substantial risk of harm to that inmate's health or safety. Nowhere do such allegations appear in Plaintiff's Complaint, and, because it is quite clear that

12

Plaintiff is attempting to hold Defendant Kennedy liable just for being tasked with enforcing DOC rules and policies that had a negative impact on his mental health, the Court will not grant Plaintiff leave to amend because it can conceive of no set of facts whereby Plaintiff could state a plausible Eighth Amendment claim against Defendant Kennedy under such theory.

Furthermore, with respect to Plaintiff's various complaints about the lack of adequate mental health care for prisoners in the DTU, once again the Court notes that there are no facts alleged in the Complaint that Plaintiff was ever denied necessary and appropriate mental health care for his mental illnesses that resulted in a substantial risk of harm to his health and safety, much less that Defendant Kennedy knew of and disregarded that risk. As such, Plaintiff has failed to state a claim against Defendant Kennedy upon which relief can be granted.

### D. <u>Amendment</u>

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See* <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 114 (3d Cir. 2002). Based on his current allegations, the Court cannot perceive additional facts that Plaintiff could plead which would overcome the deficiencies in his Complaint, particularly because it appears that the Complaint was untimely filed. Accordingly, the Court will not grant Plaintiff leave to amend.

For the reasons set forth above, the Court has determined that Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, final judgment pursuant to Rule 58 will be entered in the form of a

dismissal of the Complaint with direction to mark the case closed.  A separate Order will issue.

<u>Dated: October 31, 2023</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

Cc:   Jerome Junior Washington
      HV0282
      SCI Forest
      P.O. Box 945
      286 Woodland Drive
      Marienville, PA  16239